## J. W. JOHNSON AND WIFE *v.* R. P. ROLAND *et al.*, and JOHN H. McDOWELL *v.* J. W. JOHNSON AND WIFE.

1. DURESS. *What will constitute.* The threat must be of such a character as to overcome the mind and will and destroy the free agency of a person of ordinary firmness.

2. EVIDENCE. *Deposition. Competency of.* The deposition of a witness is admissible in evidence, though taken while the witness was incompetent, provided the witness be competent when his evidence is offered on the hearing of the cause.

3. TRUSTEE. *Evidence of acceptance. Effect of non-acceptance on the legal title.* The deed was acknowledged by the bargainor, and properly registered; this would not vest the legal title in the trustee without his acceptance, the *delivery* of a deed of assignment being essential. While the dissent of a trustee to accept the trust may re-vest the legal title in the grantor, yet the beneficiaries may have the trust executed for their benefit by a Court of Chancery.
   Cases cited: Watts *v.* Targent, 6 Penn., 329; Brevard *v.* Neely, 2 Sneed, 164.

4. SAME. *Levy on land held by trust deed.* Where a valid trust deed exists, no title to property so held can be acquired under subsequent levy.
   Cases cited: Hannum *v.* Wallace, 4 Hum., 143.

---

### FROM WARREN.

---

Appeal from the Chancery Court. JOHN P. STEELE, Chancellor.

SAVAGE & SPURLOCK for Johnson and wife.

THOMPSON & SON for R. P. Roland *et al.*

W. E. B. JONES for McDowell.

J. W. Johnson and Wife *v.* R. P. Roland *et al.*

BURTON, Special J., delivered the opinion of the Court.

The counsel who opened this cause remarked correctly that there were three causes in the transcript of the Record, but they were consolidated and heard together as one cause.

We will proceed to consider them in the order in which they were presented.

1. The first bill was filed in the Chancery Court at McMinnville, on the 6th day of September, 1866, by J. W. Johnson and wife (Mary S.), against R. Roland, M. Hatterman, and Michael Blackburn.

The complainant (Mary S. Johnson) was the widow, sole legatee and executrix of Dr. H. B. Stubblefield, and she and her husband sue in their representative capacity.

The bill charges, in substance, that in the year 1861, complainant (Mary S.), as executrix, obtained a judgment before G. S. Purvis, a Justice of Warren, against the defendants for the sum of $255.80 and costs. Execution issued on this judgment, and was levied on the tract of land in suit of sixty acres, as the property of Roland, he being the principal debtor, and Hatterman and Blackburn being his sureties. The land was condemned to be sold for the satisfaction of this judgment by the Circuit Court of Warren, at its October term, 1865.

It further appears from the bill and evidence that on the 15th of July, 1862, Hatterman paid on the Justice's judgment $250, and took Mrs. Stubblefield's

receipt for the same, though it was not credited on the judgment. This payment was made in Confederate money, and was probably furnished by Roland, who was in the Confederate army, to Hatterman for that purpose. In the proceedings for condemnation no notice is taken of this credit, but the land was ordered to be sold to satisfy the whole debt and interest. A few days after this condemnation was had Roland went forward and paid to one Norwood, a Deputy Clerk of the Circuit Court, $29.85, the amount due on the judgment, after deducting the $250 paid in Confederate money, on the 15th of July, 1862; and this balance was paid, it seems, to one Pennybaker, the collecting officer of Mrs. Stubblefield. The bill alleges that this payment of $250 was made and the money received by complainant "under duress," and "from threats and intimations of violence to herself and property" on the part of Roland. Roland and Hatterman answer that he paid the $250 and took complainant's receipt for the same; he denies in the most positive and specific manner that he used any threats or fraud or other illegitimate means to induce the complainant to receive the Confederate money. The answer is not sworn to, the bill expressly waiving it.

The prayer of the complainants' bill is that the payment made under the facts aforesaid be declared void, and the payment of the $250 be declared void and held for naught. We have examined the evidence in this case, and our conclusion from it is,

that there was nothing done by Hatterman to render the receiving of this money by the complainant void by reason of its being received under duress.

The doctrine of duress *per minas* has been so frequently discussed by this Court that no re-statement of it is called for here. It is sufficient to say that the threat must be of such a character as to overcome the mind and will and destroy the free agency of a person of ordinary firmness.

But one witness was examined by the complainants on this subject. The substance of his testimony is, that when Hatterman offered the money to Mrs. Stubblefield, she refused to take it. Hatterman replied that it was all the money that Roland could get, he being in the army. He stated that the Confederate authorities had made it a legal tender; he inquired the way to Brewster's; said that General Forrest was there, and that he would go and see him. Hatterman got up to start, when the complainant agreed to receive the money. After Hatterman left, complainant told witness that she had no use for the money, but that she preferred taking it to having any trouble about it.

The testimony of Hatterman is also taken in the cause. It was objected to, because he was a party defendant. The objection was sustained, and appeal taken to the Chancellor. How he disposed of the question, or whether he acted upon it at all, the Record nowhere discloses. But however this may be, this cause and the other with which it was consoli-

dated were not heard until May, 1870, at which time the Act of Assembly was in force providing that no person shall be incompetent to testify in a suit because he or she is a party to the same or has an interest in the subject matter thereof.

In construing this enactment, the Court has repeatedly held that the deposition of a witness is admissible in evidence, though taken while the witness was incompetent, provided the witness was competent when his evidence is offered on the hearing of the cause. When we look to this deposition of Hatterman, he denies that he used any threat or misrepresention, or other unfair means to induce Mrs. Stubblefield to receive the Confederate money just as emphatically and particularly as we have seen he did in his answer to the bill; he again insists that she voluntarily received the money. We also think that Hatterman's evidence derives some support from the facts stated by Pennybaker, that Mrs. Stubblefield wrote to him that she had received the $250, and had credited it on his (Pennybaker's) receipt for the claim. It is very apparent that Mrs. Stubblefield was not willing to receive more Confederate money than she could use in defraying her expenses, and when Hatterman paid her this money she was disinclined to receive it, because she apprehended that she could not make use of it; and this, we think, was the extent of the opposition made by her to the receipt of it. Our conclusion, therefore is, that the payment of this $250 was a valid payment; what

became of the balance due of $29.50 paid to Penny-baker by Norwood (the Clerk) does not appear. The inference is that it was paid to Johnson and wife. At all events, the payment to Pennybaker (the collecting officer) was a valid payment, and extinguished the debt, a fact to be borne in mind, as it is important in another aspect of this case to be presently considered.

2. The next question to be disposed of in this case arises on a bill filed by John H. McDowell against Johnson and wife, H. B. Stubblefield and Melville Hatterman, and in order to show the issue made by them, the following statement of facts is thought necessary :

It should, perhaps, have been mentioned before that besides the judgment already mentioned, Mrs. Stubblefield, as the executrix of her former husband, obtained another judgment before Purvis for $114.57 and costs, on the 30th day of March, 1861, against Roland, Green Blackburn and Michael Blackburn. An execution issued on this judgment, and came to the hands of Pennybaker (a constable), and was by him levied on this same sixty acres of land, as the property of Roland, on the 14th day of September, 1865. At the following term of the Circuit Court, beginning on the 2d day of October, 1865, the land was condemned to be sold to satisfy this judgment. It was sold under a *venditioni exponas* on the 6th day of January, 1866, and bought by the complainants (Johnson and wife). Such is the title of the com-

plainants (Johnson and wife). On the other hand, it is shown by McDowell's bill and by the proof in the cause that as early as the third day of January, 1861, Roland conveyed the land in trust to John Gribble to indemnify his sureties on these several debts thus described: "A note to H. B. Stubblefield, in the sum of $240, with M. Hatterman security; also (2) one note that Uriah Jaco holds for $112, R. B. Lane security; and (3) $50 to A. J: Brown, stayed by the said R. B. Lane." The first named debt is identified as the one on which the judgment of $250, so often referred to, was obtained. The counsel of complainants suggest in argument that the "Jaco" debt is the same debt probably of $114, on which Johnson and wife sold the land. But we are satisfied it is not the same debt, and note the fact here to avoid a discussion which that hypothesis could lead to. The trustee (Gribble) was authorized to sell the land (and also some personalty conveyed), if the debts remained unpaid at the expiration of eight months for cash and at public sale. He did not however sell, and in fact seems to have done very little in execution of the trust deed. On the 6th of October, 1865, the deed of trust remaining unexecuted, the complainant (McDowell) bought the land from Roland, at the sum of $350. He took the deed of Roland for the land, and also the deed of John Gribble (the trustee). McDowell states very positively that he knew nothing of any indebtedness of Roland at the time, except $35, that the beneficiaries

14—vol. 2.

in the deed told him was unpaid, and this he furnished to Roland to pay off, and he did pay it off. This $35 is no doubt the money that went to pay the balance of the Stubblefield judgment of $255.80. McDowell further states that he bought in good faith, and no evidence contradicts him on these points. He further insists that the levy of the execution on the land, by virtue of the judgment in favor of Johnson and wife, was void, because at the time it was made —namely, on the 14th of September, 1865, the legal title was outstanding in the trustee (John Gribble.)

If at the time the levy was made upon the land the deed of trust to Gribble was a valid, subsisting, and unsatisfied deed, it is plain that Johnson and wife acquired no title to the property by virtue of their levy and purchase under such circumstances. *Hannum* v. *Wallace,* 4 Hum., 143.

The only question that could be made as to the validity of this deed of trust is raised by the statements of John Gribble (the trustee). He states in general terms that "he never accepted the trust." The deed was acknowledged by the bargainor (Roland) on the day after its execution, and was, on such acknowledgment, properly registered. This, however, it would seem of itself would not be sufficient to vest the *legal title* in the trustee without his subsequent acceptance; for the *delivery* of a deed of assignment is just as essential, it seems, to complete the conveyance, as in the case of a common law deed. If, then, Gribble had rejected this deed and refused to

have any thing to do with it when it came to his knowledge, that would perhaps have had the effect of re-vesting the *legal* title in the grantor (Roland) by a species of his remitter, although his dissent could not affect the right of the beneficiaries to have the *trust* executed for their benefit by a Court of Chancery. *Watts* v. *Targent,* 6 Penn. R., 329; 2 Sneed, p. 164.

We are saved, however, the necessity of discussing these questions by a critical examination of the testimony of Gribble. It is plain, we think, that he did accept this trust, notwithstanding his disclaimer. When he is asked what became of the deed of trust, he states that he gave it to McDowell to show to Norwood, and had not seen it since; thus plainly implying that he did take possession of the deed, and undertook in the first place to carry out its provisions. It is very palpable to our minds that Gribble's disclaimer resulted from a consciousness that he had failed to do his duty about this trust property, and was prompted by the fear of being called to account for it.

Our conclusion, therefore is, that there was a valid, legal outstanding title in Gribble (the trustee) at the time the execution was levied in favor of Johnson and wife, and therefore they acquired no lien on the property thereby. The title had not reverted to the assignor (Roland) at this time, because the debts provided for in the trust deed had not been fully paid. Neither did it revert before the

sale under the execution, or at any time, for we also think that the deeds of Gribble and Roland of the 6th of October, 1865, conveyed a good title to Mc-Dowell to the land in suit.

There is, as we think, no evidence that this was a fraudulent contrivance between Roland and McDowell, there being no evidence that disproves the positive averment of McDowell that he had no knowledge of the existence of any debt of Roland's except the debts provided for in the deed of trust.

3. The complainants can have no relief under the bill filed by them against Gribble and McDowell and Roland to have this deed of trust executed for their benefit, for the reason that their debt of $256.80 secured in this deed of trust is and was satisfied at the time they filed their bill.

It will be seen that we have not discussed the regularity or propriety of the mode of procedure to which the several parties have resorted to assert their rights. They have not seen proper to interpose objection themselves, and we are content to declare their rights resulting from the facts disclosed in this Record.

Upon the whole case we conclude that the defendants, Roland, Hatterman and Blackburn, are entitled to have it declared by decree of this Court that the judgment of $250 against them is satisfied and extinguished. We think, also, that McDowell has the right to have it declared by the decree of this Court that the sale and purchase of Johnson and

wife at the execution sale is a cloud or incumbrance upon the title that he acquired by his purchase from Gribble (the trustee) and Roland, which he has the right to have removed.    The several bills of Johnson and wife must be dismissed at their cost.    But the complainant in the cross-bill (McDowell), we think should pay the costs that occurred under the filing of his bill both in this Court and in the Court below.    The decree of the Chancellor is reversed and a decree will be entered here modified in accordance with this opinion.